<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| RUHEL CHOWDHURY, | : | **Hon. William J. Martini** |
| Petitioner, | : | |
| | : | Civil No. 10-2532 (WJM) |
| v. | : | |
| ERIC H. HOLDER, et al., | : | <u>OPINION</u> |
| Respondents. | : | |

**APPEARANCES**:

    RUHEL CHOWDHURY
    Bergen County Jail
    160 South River Street
    Hackensack, New Jersey 07601
    Petitioner <u>Pro</u> <u>Se</u>

    PAUL J. FISHMAN, UNITED STATES ATTORNEY
    LEAH A. BYNON, Assistant U.S. Attorney
    970 Broad Street
    Newark, New Jersey  07102

<u>**MARTINI**</u>, <u>District Judge</u>

    Ruhel Chowdhury, confined at the Bergen County Jail in Hackensack, New Jersey, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging his detention in the custody of the Department of Homeland Security ("DHS").  Respondents filed an Answer, two declarations, and several certified exhibits.  Petitioner filed a Reply.  For the reasons expressed in this Opinion and as required by <u>Demore v. Kim</u>, 538 U.S. 510 (2003), this Court will dismiss the Petition.

## I.  BACKGROUND

Ruhel Chowdhury, a native and citizen of Bangladesh, challenges his detention in the custody of DHS.  Petitioner emigrated to the United States from Bangladesh on April 10, 1996.  On July 3, 2008, Petitioner pled guilty to second-degree grand larceny in the Supreme Court of the State of New York.  On April 23, 2009, the Supreme Court of New York sentenced Petitioner to one year of imprisonment.  On July 1, 2009, upon Petitioner's release from the custody of the State of New York, DHS took him into custody at the Bergen County Jail based on an arrest warrant issued pursuant to 8 U.S.C. § 1226(c).  (Docket Entry #91- at p. 46.)  DHS officials served him with a Notice of Custody determination (docket entry #9-1, p. 45) informing him that he was subject to mandatory detention, and a Notice to Appear for removal (docket entry #9-1, p. 43).  The Notice to Appear states that, based on Petitioner's April 23, 2009, grand larceny conviction and one year sentence, he is subject to removal pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii)[1] of the Immigration and Nationality Act ("INA") in that he was convicted of an aggravated felony, a law relating to a theft offense or burglary offense for which the term of imprisonment of at least one year was imposed.  (Docket Entry #9-1, p. 43.)  Petitioner has been detained at the Bergen County Jail since July 1, 2009, pending the outcome of the removal proceeding.

An Immigration Court in New York, New York, adjourned Petitioner's removal hearing at Petitioner's request on several occasions, including August 19, 2009, October 7, 2009, December 3, 2009, March 23, 2010, and April 5, 2010.  On October 7, 2009, Petitioner appeared

---

[1] "Any alien who is convicted of an aggravated felony at any time after admission is deportable."  8 U.S.C. § 1227(a)(2)(A)(iii).

before an Immigration Judge and, "through counsel, he admitted to the truth of the four factual allegations contained in the Notice to Appear and conceded that he is subject to removal as an aggravated felon under section 237(a)(2)(A)(iii) of the Act as defined in 101(a)(43)(G) of the Act. Based upon the petitioner's admissions and concession through counsel the Court found that the petitioner's removability was established by clear, unequivocal, and convincing evidence as required. Then the case was adjourned to allow the petitioner to prepare an application for protection under the Convention Against Torture." Declaration of Susan Marie Beschta, Assistant Chief Counsel of the New York Office of the Chief Counsel of DHS, dated Aug. 11, 2010 (Docket Entry 9-1, p. 3.) Petitioner thereafter filed an Application for Asylum and for Withholding of Removal. (Docket Entry #9-1, pp. 16-25.) On December 3, 2009, Petitioner appeared before an Immigration Judge, filed an application for protection under the Convention Against Torture, and the case was scheduled for a merits hearing on March 23, 2010. The March 23, 2010, date was adjourned at Petitioner's request because counsel failed to appear; the April 5, 2010, date was adjourned at the request of Petitioner's new attorney; and a merits hearing was scheduled for October 8, 2010.[2] (Docket Entry #9-1, pp. 1-4.)

      Petitioner executed the § 2241 Petition presently before this Court on May 13. 2010. The Clerk filed in on May 17, 2010. While the Petition is not a model of clarity, this Court reads the Petition as raising the following grounds: (1) Petitioner is not subject to mandatory detention under 8 U.S.C. § 1226(c), and (2) if Petitioner's detention since July 1, 2009, without a bond hearing is mandated by 8 U.S.C. § 1226(c), then the statute violates procedural and substantive due process. Petitioner seeks a Writ of Habeas Corpus directing DHS to immediately release

---

[2] The parties have not advised this Court of the outcome of the October 8, 2010, hearing.

him from custody because his continued detention is not statutorily authorized and violates the Fifth Amendment of the United States Constitution.

This Court ordered the government to file an answer responding to the Petition and including the statutory authority for Petitioner's detention, the date on which Petitioner was released from state custody, and the dates of Petitioner's detention by DHS. On August 12, 2010, DHS filed an Answer, with declarations and exhibits. On August 24, 2010, Petitioner filed a Reply, and on February 9, 2011, he filed a letter. To date, neither party has advised this Court that an Immigration Judge has ordered Petitioner's removal.

## II. DISCUSSION

A. Jurisdiction

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody," and (2) the custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490 (1989). This Court has subject matter jurisdiction over the Petition under § 2241 because Petitioner was detained within its jurisdiction in the custody of DHS at the time he filed his Petition, see Spencer v. Kemna, 523 U.S. 1, 7 (1998), and he asserts that his detention is not statutorily authorized and violates his due process rights. See Zadvydas v. Davis, 533 U.S. 678, 699 (2001); Bonhometre v. Gonzales, 414 F.3d 442, 445-46 (3d Cir.2005).

B.  Legality of Detention

Petitioner contends:  (1) he is not subject to mandatory detention under 8 U.S.C. § 1226(c) because his grand larceny conviction does not constitute an aggravated felony under that statute; (2) he is not subject to mandatory detention under 8 U.S.C. § 1226(c) because his criminal defense attorney was constitutionally ineffective in failing to accurately advise him that his guilty plea to grand larceny would subject him to removal; and (3) Petitioner's mandatory detention pursuant to 8 U.S.C. § 1226(c) since July 1, 2009, violates procedural and substantive due process.  Before considering Petitioner's arguments, this Court will outline the relevant statutes.

The INA authorizes the Attorney General of the United States to issue a warrant for the arrest and detention of an alien pending a decision on whether the alien is to be removed from the United States.  See 8 U.S.C. § 1226(a).  Specifically, § 1226(a) provides:

> (a) Arrest, detention, and release
>
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.  Except as provided in subsection (c) of this section and pending such decision, the Attorney General –
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on –
>
> > (A) bond of at least $1,500 . . ; or
> >
> > (B) conditional parole; but
>
> (3) may not provide the alien with work authorization . . . unless the alien is lawfully admitted for permanent residence or otherwise would . . . be provided such authorization.

8 U.S.C. § 1226(a).

Section 1226(b) provides that "[t]he Attorney General at any time may revoke a bond or parole authorized under subsection (a) of this section, rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b).

However, for certain criminal aliens, including those convicted of an aggravated felony, § 1226(c) mandates detention during removal proceedings. See 8 U.S.C. § 1226(c). Section 1226(c) provides in relevant part:

> (c) Detention of criminal aliens
>
> (1) Custody
>
> The Attorney General shall take into custody any alien who . . . is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (d) of this title . . . , when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.
>
> (2) Release
>
> The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

8 U.S.C. § 1226(c)(1)(B) and (c)(2); see Demore v. Kim, 538 U.S. 510, 527-28 (2003) (section 1226(c) "governs detention of deportable criminal aliens *pending their removal proceedings*. Such detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed").

"[W]hen an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). Section 1231(a)(2) requires the Attorney General to detain aliens during the removal period: "During the removal period, the Attorney General shall detain the alien." 8 U.S.C. § 1231(a)(2). "The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231 (a)(1)(C).

The removal period does not begin until **the latest** of several events occurs, one of which is the date the removal order becomes administratively final. See 8 U.S.C. § 1231(a)(1)(B). Specifically, § 1231(a)(1)(B) provides:

> The removal period begins **on the latest** of the following:
>
> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B) (emphasis added).

If DHS does not remove the alien within the removal period, then § 1231(a)(6) authorizes the Attorney General to either release or continue to detain the alien. Specifically, § 1231(a)(6) provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

In Zadvydas v. Davis, 533 U.S. at 701, to avoid a constitutional question, the Supreme Court held that § 1231(a)(6) does not authorize the Attorney General to detain aliens indefinitely beyond the removal period, but "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. The Court cautioned that, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by [§ 1231(a)(6)]." Id. at 699. To guide habeas courts, the Court recognized six months as a "presumptively reasonable period" of post-removal-period detention. Id. at 701. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the

8

'reasonably foreseeable future' conversely would have to shrink." Id. See also Clark v. Martinez, 543 U.S. 371, 384 (2005).

The above discussion demonstrates that the statutory authority to detain an alien depends on where the alien is in the removal process. Section 1226(a) provides the Attorney General with discretionary authority to detain or to release aliens on bond or conditional parole pending the outcome of the removal proceeding. Section 1226(c)(1) requires the detention of specified criminal aliens prior to the removal period. Section 1231(a)(2) mandates detention during the removal period established in § 1231(a)(1)(B), and § 1231(a)(6) provides the Attorney General with discretionary authority to detain aliens beyond the removal period, or release them under supervision. See Diouf v. Mukasey, 542 F. 3d 1222, 1228 (9th Cir. 2008).

As explained above, the removal period begins on the latest of three dates: (i) the date the order of removal becomes administratively final; (ii) if the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; or (iii) if the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement. See 8 U.S.C. § 1231(a)(1)(B). Option (i) does not apply on the record before this Court since no order of removal has been entered against Petitioner.[3] Option (ii) does not apply, as Petitioner has not sought judicial review of an order or removal. Option (iii) does not apply to Petitioner, since he was not subject to an order of removal while he was in the custody of New York authorities. Accordingly, Petitioner's removal

---

[3] An order of removal becomes "final upon the earlier of –(i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47)(B).

9

period has not yet begun. Because removal proceedings are pending against Petitioner and the removal period has not begun, then either § 1226(a) or 1226(c) governs Petitioner's pre-removal-period detention.

Petitioner implicitly argues that his detention is governed by § 1226(a) (which allows release under supervision), rather than § 1226(c) (which requires detention until the beginning of the removal period). First, Petitioner argues that his predicate offense - grand larceny - does not qualify as an aggravated felony within § 1226(c)(1)(B). Second, Petitioner argues that he should not be subject to mandatory detention under § 1226(c)(1)(B) because his defense attorney was constitutionally ineffective in failing to advise him prior to his guilty plea to grand larceny that the plea would subject Petitioner to removal and mandatory detention.

Petitioner argues that he did not commit an aggravated felony within the meaning of § 1226(c)(1)(B). This argument fails because Petitioner conceded before the Immigration Judge on October 7, 2009, that he is deportable by reason of having committed an aggravated felony covered in 8 U.S.C. § 1227(a)(2)(A)(iii). By virtue of this concession, Petitioner is subject to mandatory detention by the express terms of § 1226(c)(1)(B).[4]

Petitioner's second argument against the applicability of § 1226(c)(1)(B) is that his defense attorney was constitutionally ineffective in failing to advise him prior to entry of the plea that the grand larceny conviction subjected him to removal under § 1227(a)(2)(A)(iii) and

---

[4] In conceding that he was removable under § 1227(a)(2)(A)(iii), Petitioner forwent a hearing before an Immigration Judge at which he would have been entitled to raise arguments demonstrating that he is not subject to mandatory detention under § 1226(c). See 8 C.F.R. § 1003.19; Demore v. Kim, 538 U.S. at 514; Matter of Joseph, 22 I. & N. Dec. 799, 1999 WL 339053 (BIA 1999).

10

mandatory detention under § 1226(c)(1)(B).[5] This argument fails for two reasons. First, as previously stated, Petitioner conceded before the Immigration Judge that he is subject to removal (and mandatory detention) on the basis of the grand larceny conviction. Second, Petitioner has submitted nothing to this Court showing that his grand larceny conviction is not final for immigration purposes.[6] Petitioner does not indicate that his direct appeal from the conviction is pending before any state court or that a state court has vacated the conviction. Nor does Petitioner state that he is pursuing post conviction relief. Even if Petitioner were currently raising his ineffective assistance of counsel claim in a pending state petition for post-conviction relief, this fact would not alter the finality of the conviction for immigration purposes because "such pendency does not vitiate finality, unless and until the convictions are overturned as a result of the collateral motions." Paredes, 528 F. 3d at 198-99; see also Pereira-Polanco v. Attorney General of U.S., 2010 WL 5136045 (3d Cir. Dec. 17, 2010); United States v. Garcia-Echaverria, 374 F. 3d 440, 445-46 (6th Cir. 2004); Okabe v. Immigration and Naturalization

---

[5] See Padilla v. Kentucky, ___ U.S. ___, 130 S. Ct. 1473 (2010) (holding that when the deportation consequence of a guilty plea could easily be determined from reading the removal statute, deportation is presumptively mandatory, and defense counsel incorrectly advises the alien that the guilty plea will not result in removal, attorney's performance is deficient under the first prong of Strickland v. Washington, 466 U.S. 668 (1984)).

[6] The INA defines "conviction," in relevant part, to mean, "with respect to an alien, a formal judgment of guilt of the alien entered by a court." 8 U.S.C. § 1101(a)(48)(A). See Acosta v. Ashcroft, 341 F. 3d 218, 222 (3d Cir. 2003). A conviction must attain finality, however, before it can support an order of removal under the INA. See Pino v. Landon, 349 U.S. 901 (1955) (per curiam). "[A] conviction does not attain a sufficient degree of finality for immigration purposes until direct appellate review of the conviction has been exhausted or waived." Paredes v. Attorney General of U.S., 528 F. 3d 196, 198 (3d Cir. 2008) (quoting Matter of Ozkok, 19 I. & N. Dec. 546, 552 n. 7 (BIA 1988)); see also Marino v. Immigration & Naturalization Service, 537 F.2d 686, 691-92 (2nd Cir. 1976); Aguilera-Enriquez v. Immigration and Naturalization Service, 516 F.2d 565, 570 (6th Cir. 1975); Will v. INS, 447 F. 2d 529 (7th Cir. 1971).

Service, 671 F.2d 863, 865 (5th Cir. 1982). Accordingly, even if defense counsel failed to properly advise Petitioner of the immigration consequences of his guilty plea, same has no effect on the applicability of § 1226(c)(1)(B) where the conviction is final on direct appeal and no court has overturned the conviction on post-conviction relief or other collateral attack.[7]

Because Petitioner was convicted of an aggravated felony and removal proceedings are pending, this Court finds that Petitioner's detention is required by 8 U.S.C. § "1226(c) [which] mandates detention during removal proceedings for a limited class of deportable aliens - including those convicted of an aggravated felony." Demore, 538 U.S. at 517-18.

Petitioner next argues that, if § 1226(c)(1)(B) mandates his detention pending his removal proceedings, then the statute is unconstitutional because he poses neither a danger to society nor a flight risk.[8] This is the same argument habeas petitioner Kim raised, and the Supreme Court rejected, in Demore v. Kim, supra. In that case, Kim, who like Petitioner was subject to mandatory detention because he committed an aggravated felony, filed a habeas corpus petition under 28 U.S.C. § 2241 challenging "Section 1226(c)'s absolute prohibition on his release from detention, even where, as here, the INS never asserted that he posed a danger or significant flight

---

[7] If Petitioner's direct appeal of his conviction is in fact pending before the New York courts but he neglected to so inform this Court, then Petitioner may ask this Court to reopen this proceeding on that basis. If Petitioner's conviction is vacated pursuant to a post-conviction motion or other collateral attack, then it may no longer provide a basis for his removal. See Pinho v. Gonzales, 432 F. 3d 193, 210 (3d Cir. 2005); Sawkow v. Immigration and Naturalization Service, 314 F.2d 34, 37 (3d Cir. 1963). In that event, the proper course for petitioner would be to file a motion before the Immigration Judge to terminate removal proceedings. See Matter of Rodriguez-Ruiz, 22 I. & N. Dec. 1378 (BIA 2000).

[8] Unlike the petitioner in Akinola v. Weber, 2010 WL 376603 (D.N.J. Jan. 26, 2010), Petitioner Chowdhury does not argue (nor could he argue on this record) that DHS officials prolonged his detention under § 1226(c) by repeatedly requesting continuances of the removal hearing and appealing the Immigration Judge's decision granting deferral of removal.

risk." Demore, 538 U.S. at 514 n.2 (quoting Kim's brief). The District Court granted the writ and ordered DHS to conduct an individualized bond hearing to determine whether Kim posed a flight risk or danger to the community, and the Ninth Circuit affirmed, holding that § 1226(c) violates substantive due process because DHS had not provided adequate justification for mandatory pre-removal period detention sufficient to overcome a lawful permanent alien's liberty interest.

The Supreme Court reversed. The Court framed the question as follows: "Despite this Court's longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings, respondent argues that the narrow detention policy reflected in 8 U.S.C. § 1226(c) violates due process. Respondent, like the four Courts of Appeals that have held § 1226(c) to be unconstitutional. relies heavily upon our recent opinion in Zadvydas v. Davis [which] read § 1231 to authorize continued detention of an alien following the 90-day removal period for only such time as is reasonably necessary to secure the alien's removal." Demore, 538 U.S. at 526-27.

The Supreme Court distinguished Zadvydas in two respects. First, unlike the situation in Zadvydas where removal of the petitioners was no longer practically attainable, detention pending removal proceedings "necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." Id. at p. 528. The Court rejected the petitioners' argument that mandatory detention pending removal proceedings violates due process because the government did not demonstrate that individualized bond hearings would be ineffective or burdensome: "[W]hen the Government deals with deportable aliens, the Due

13

Process Clause does not require it to employ the least burdensome means to accomplish its goal."
Id.

Next, the Supreme Court distinguished Zadvydas on the ground that, while the post-removal-period detention of the petitioners in Zadvydas was potentially indefinite under § 1231(a)(6) where the practicality of their actual removal was not reasonably foreseeable after six months of detention, the detention of aliens under § 1226(c) pending removal proceedings is necessarily temporary:

> Zadvydas distinguished the statutory provision it was there considering from § 1226 on these very grounds, noting that "post-removal-period detention, *unlike detention pending a determination of removability* [], has no obvious termination point." [quoting Zadvydas, 533 U.S. at 697] (emphasis added). Under § 1226(c), not only does detention have a definite termination point, in the majority of cases it lasts for less than the [six months] we considered presumptively valid in Zadvydas.

Demore, 538 U.S. at 529.

The Supreme Court expressly rejected Kim's argument that, if mandatory detention pending removal proceedings under § 1226(c) is allowed, "the length of detention required to appeal [an order of removal] may deter aliens from exercising their right to do so. As we have explained before, however, the legal system . . . is replete with situations requiring the making of difficult judgments as to which course to follow, and, even in the criminal context, there is no constitutional prohibition against requiring parties to make such choices." Demore, 538 U.S. at 531 n.14 (citations and internal quotation marks omitted).

The Supreme Court summarized its ruling as follows:

> Detention during removal proceedings is a constitutionally permissible part of that process. See , e.g., Wong Wing, 163 U.S.

> at 235, 16 S. Ct. 977 ("We think it clear that detention, or temporary confinement, as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens would be valid"); Carlson v. Landon, 342 U.S. 524 . . . (1952); Reno v. Flores, 507 U.S. 292 . . . (1993).  The INS detention of respondent, a criminal alien who has conceded that he is deportable, for the limited period of his removal proceedings, is governed by these cases.

Demore, 538 U.S. at 531.

The Third Circuit has not applied Demore in any published decision.  However, in Castellanos v. Holder, 337 Fed. App'x 263 (3d Cir. 2009), the Third Circuit affirmed the dismissal of a § 2241 petition raising a challenge under Zadvydas to petitioner's mandatory detention pursuant to § 1226(c) pending the outcome of his petition for review of an order of removal denying asylum, where the Court of Appeals had stayed petitioner's removal.  The Third Circuit rejected the contention that detention under § 1226(c) is indefinite as follows:

> Castellanos' detention period is not "indefinite" for three reasons.
>
> (1) Castellanos "is not stuck in a 'removeable-but-unremoveable limbo,' as the petitioners in Zadvydas were." Prieto-Romero v. Clark, 534 F. 3d 1053, 1063 (9th Cir. 2008).  To the contrary, the Government is ready and willing to remove Castellanos but must wait for a final order of removal to do so legally.
>
> (2) While Castellanos' detention lacks a certain end date, the end is still reasonably foreseeable - the completion of removal proceedings.  See Zadvydas, 533 U.S. at 699 [].
>
> (3) Castellanos himself has requested the continuance of his removal hearing.  See Demore v. Kim, 538 U.S. 510, 530-31 . . . (2003).

Castellanos, 337 Fed. App'x at 268.

In this case, Petitioner has conceded his deportability as an aggravated felon, and his challenge to the constitutionality of his detention under § 1226(c) is identical to that presented to and rejected by the Supreme Court in Demore v. Kim. This Court holds that Petitioner's detention pending the outcome of removal proceedings is required by § 1226(c)(1)(B) and is not unconstitutional. See Demore, supra; Aikens v. Reno, 330 F. 3d 547 (2d Cir. 2003); Nivar v. Weber, Civ. No. 10-0825 (FLW), 2010 WL 4024771 (D.N.J. Oct. 13, 2010).

### III.  CONCLUSION

For the reasons set forth above, the Court will dismiss the Petition.

s/William J. Martini

**WILLIAM J. MARTINI, U.S.D.J.**

DATED: February 25, 2011